May it please the Court, Jill Gensling on behalf of the appellant, Dennis Dean Coleman. In this case, the government had the burden of proving that Mr. Coleman violated the terms of his supervised release by possessing a firearm. Now, it's undisputed that there was no evidence of actual possession in this case, so the government had to prove that Mr. Coleman had constructive possession of the firearm. In order to do that, the government had the burden of proving that Mr. Coleman exercised dominion and control over the firearm and that he had knowledge of its presence. The government failed to meet that burden as a matter of law because the government and the district court relied on an inference that Mr. Coleman had knowledge of the gun and control over the gun, an inference that this Court has repeatedly held to be improper in cases such as this one where the firearm or other contraband is found in a jointly occupied residence. Shouldn't we be looking at what California law says is sufficient rather than what Federal law says is sufficient? Well, Your Honor, I believe the California case law is on point as well. The standard is the same. The government must prove knowledge and dominion and control over the firearm. And I think the thing that I find difficult about your argument, and maybe you can help me with this, is that the probation officer's statement is that your client said the south bedroom was my bedroom. And if it was his alone, there's contrary testimony, of course, but that's up to the trial court to deal with those conflicts. But if you take as true that was his bedroom, there was one, it was very small, there was one small bed in it. So if it was his bedroom and his bed and his mattress where the gun was found, why isn't it a permissible inference to say his bed, his gun? Well, Your Honor, and I do want to make clear that we're not challenging the district court's finding of crediting the probation officer's testimony. But the reason why it's not permissible goes to the nature of jointly occupied residence. When people share a residence, the people within that residence have access to the different rooms within the house. I think if the gun had been found, for example, in the kitchen in the apartment. So maybe his grandmother went in there and hid her gun under his mattress? Well, the grandmother or somebody else who might have had access to the apartment. But that's speculation. What we know from the probation officer is that this was his bedroom, and there's no indication he shared it with his grandmother. From his testimony. Well, there's no indication that he shared it in terms of who slept there. But there is indication that he did not have exclusive control over the bedroom. There was women's clothing found within that bedroom, and some of Mr. Coleman's belongings were found in the north bedroom, indicating that both residents of the apartment had the run of the place. They could go in and out of the rooms as they wish. I think we would have a different situation here if, for example, there had been a lock on the bedroom door. And Mr. Coleman. Is that your view? You must have in a residence, if it's my room and it's not locked, it's just over with. Is that right? Well, I don't know that necessarily the lock is dispositive. If there's other evidence tying someone else in the apartment or tying the defendant to the gun. Well, we know that it's, as you said, the door is open. Grandmother can go in and hide her gun there if she wants. That's correct, Your Honor. But in your view, unless he's able to lock his grandmother out so she couldn't do that, then the fact that it's in his bed between his mattress and his inner springs is irrelevant because it's just too bad. Somebody else could go in there and put it there. Correct? Your Honor, my position is that under the case law of the circuit, it is insufficient. No, I'm asking if that's your view. Yes. My view is that in the absence of other evidence tying Mr. Coleman to that weapon, this Court has never affirmed a finding of constructive possession in a jointly occupied residence without some evidence, fingerprints, photos, witnesses, paperwork showing ownership tying the defendant to the firearm itself, not just to the room where the firearm was found. And I do want to make clear also that this principle applies under the case law in cases such as this one where the burden of proof in the reasonable doubt. And I'm referring to the Cazares case, which was a preponderance case where this Court held that the analysis regarding constructive possession in jointly occupied residences is the same regardless of whether the burden is preponderance or beyond a reasonable doubt. If the Court has no other questions regarding the constructive possession of the firearm, I would like to move on briefly to the sentencing issues. The most significant problem with the sentence imposed should the Court reach the sentence is the Court's consideration of the prohibited factor of the seriousness of the offense. It's clear from the ---- When you say seriousness of the offense, what do you think that phrase refers to? Seriousness of what offense? I believe it refers to the seriousness of the violation conduct. If you're correct about that, the Court can consider it. I take it what you're saying is the person has a term of probation that says commit no crimes. And whether he commits a speeding offense or a murder, the Court just can't take into account the seriousness of the violation. Is that correct? Your Honor, the Court can't take into account the need for the sentence imposed to reflect the seriousness of the violation. That's your view. Yes, Your Honor, it is, under McBell. Despite the fact that the sentencing guidelines do take into account seriousness of a violation, correct? Well, Your Honor ---- That's where they get their ABC thing. Is that right? Well, they get it based on several factors. I assume that that is one of them. Including seriousness. That's one of them. And so in your view, the sentencing guidelines are in violation of the statute. Is that correct? Your Honor, in my view, the way the statute is written in 3550-83 ---- Let me answer my question. In your view, the sentencing guidelines are in violation of the statute because they consider seriousness of the violation. Is that correct? Your Honor, I don't know what the sentencing guidelines consider where they come up with a range of 6 to 12. They indicate seriousness. Okay? Assuming that. If they're keying on seriousness, then you'd say that's in violation of the statute. Is that correct? Then I would, Your Honor, yes. Now, why doesn't seriousness of the offense in the part that's talking about violations, why isn't it to be read as it probably is read in the part in setting the sentence in the first ---- the supervisory in the first place? Why isn't it talking about the seriousness of the underlying offense as opposed to the seriousness of the violation? If indeed Congress says you can't consider the seriousness of the violation, that doesn't really make any real sense, does it? Well, Your Honor, the way I read McBell is that McBell states that the court cannot consider the seriousness of the violation conduct. It says the underlying offense. That's what McBell says. So it's not ---- McBell's not going to get you there. McBell says the underlying offense. The underlying offense is what you got sentenced for when you committed your crime. So let me ask you again. How does it make sense that Congress would pass a statute that said when somebody violates his supervised release, you just can't consider how serious the violation was? Does that make theoretical sense to you? Even if it said it, they might have said it. I don't know that it makes theoretical sense to me, but that's the way the statute is written, is that portion of 3553A was deliberately omitted from the statute by Congress. I understand your point. Thank you. Thank you. And I would like to reserve the rest of my time for rebuttal. You may do that. We'll hear now from the Governor. Good morning, Your Honors. May it please the Court, David Willingham on behalf of the United States. The record evidence supports the conclusion of the district court that the defendant constructively possessed the firearm that was found underneath his mattress in his apartment, in his room, in August of 2005. In this case, there is more than sufficient evidence that this Court can rely on to support the district court's conclusion. First, you had, as the Court has indicated in prior questioning, two personal visits by the probation officer, one in February of 2004 and one in July of 2005. In which the probation officer took direct questions from the defendant or answers from the defendant where he indicated that the grandmother occupied the other bedroom and that he occupied the bedroom in which the gun was found. This is a case where there is more than sufficient evidence to tie this defendant as the sole occupant of the bedroom and in addition to the bed and the mattress where the gun was found. Does he have to be the sole occupant in the sense of nobody else's clothes? Because clearly there was some difference in whose clothing was in those two bedrooms. He doesn't have to be the sole occupant in terms of where somebody else's clothes were found. What the Court was allowed to determine in this case is that he was the sole occupant in the bedroom. And there was more than sufficient evidence for that finding because the defendant himself in written statements to the probation officer for a period from September of 2004 through August of 2005 swore that he and his grandmother were the sole occupants of the apartment and personally pointed to the probation office that he was the occupant of that bedroom. That was sufficient for the district court to rely upon. In this case, the linchpin of the defendant's argument is essentially that there was joint occupancy of the residence. But the distinction between the cases relied upon by the defendant is that there with a small bed with a mattress containing essentially a bulky 9-millimeter handgun. In this case, there's more than sufficient evidence to tie the defendant to the gun and the bed in which it was found. And under the preponderance burden, this is a slight more slight burden that the government must prove, there was plenty of evidence for the district court to rely upon. If there aren't any further questions in that regard, I'd like to move on to the sentencing issues. Your Honors, in this case, the district court clearly did not abuse its discretion in imposing the 36-month sentence for the supervised release violation. The district court relied upon and considered and specifically rejected the guidelines under both scenarios, whether it was a grade A or a grade B violation. That's an issue that this court has skirted around as to whether in every situation the sentencing court has to decide precisely what is the applicable guideline range in order to get the advice of the advisory guidelines. What is your view of how that is supposed to work? Does the district court have to know exactly which guideline in order to receive appropriate advice? Or are there situations in which the failure to do that is harmless in some sense? The latter in this case, Your Honor. I think in this case, the only real issue is whether it was a grade B or a grade A violation, and that was of some dispute in the lower court. But in this case, because the district court was aware of both guideline ranges, and there's only really a — there's only that difference, and determined that a 36-month sentence was going to be the appropriate sentence for the factors that the district court relied on, any error, if at all, in this case, was harmless. This court has consistently approved sentences in supervised release revocations where the district court cites the factors outside of the guidelines, such as dangerousness or recidivism, specifically as the district court did in this case. And didn't Cantrell say if it makes no difference to the sentence, and it cited Williams, which said the same thing, the Supreme Court Williams case, didn't Cantrell say if it makes no difference to the sentence, then it's okay? Yes. We don't consider if it made no difference to the sentence. Yes. And this judge says it makes no difference to my sentence, because even if it's a B or an A, whichever he said, even if it's a B, it makes no difference. I'm going to sentence him to X. Yes. And the record in this case is even better, because he stated on the record that he had considered both applicable guideline ranges and determined that it simply wasn't enough, given the situation in this case, specifically citing the previous breach of trust that the court had placed in the defendant, the dangerousness of the defendant, and the recidivist nature, and the district court's belief that if given the opportunity, if he wasn't sent to prison, he would possess a firearm again. If there aren't any further questions, I'd like to move on to the gang association condition and conclude. In this case, the district court did not commit plain error in imposing the gang association restriction on this defendant. This defendant was an admitted Crips street gang member from, in his own words, since the second grade. While it may or may not be his fault for being such a member, he clearly stated that his life was about territory, money, and colors. The record is clear in this case that regardless of whether it's a plain error review standard or simply any error review standard, that given this record and this defendant and his dangerousness, this was a reasonably necessary condition to prevent his misdemeanors. The district court record was clear. And with that, I'd like to conclude unless there are further questions. Thank you. Kagan. Thank you. You have some rebuttal time, Ms. Gensley. Gensley. And very briefly, Your Honors, with respect to the question of sole occupancy of the bedroom, this Court has never held that sole occupancy of a bedroom within a jointly occupied residence is sufficient to support a finding of constructive possession in the absence of some other evidence tying the defendant to the firearm itself, not just the bedroom. And with respect to the sentencing issues and the difference between the grade A and the grade B violation, the Court found that it was unnecessary to decide the difference because neither range reflected the seriousness of the conduct. And it's our position that that consideration was improper. So the two arguments are related there. With that, I would submit. Thank you, counsel. The case just argued is submitted. And we appreciate the presentations from both of you.
judges: Fernandez, T.G. Nelson, Graber